## [ LE RAY DE CHAUMONT *against* FORSYTHE.

A covenanted to sell and convey a tract of land to B, "by a good warranty deed in fee simple," in consideration of $3270. At the time the agreement was entered into, A had but a life estate in the land; subsequently he conveyed by deed, with general warranty, all his interest in the same land to his son, in consideration of $2451. His son and other children in whom was vested the fee, then conveyed to B. *Held:* that upon the tender of such title to B the vendee, A was entitled to recover.

An assignee or grantee of land, may maintain an action of covenant against any of the prior grantors or assignors, who have entered into a general warranty of the title; and this whether he has a general warranty or not to himself.

A covenant to convey "by a good warranty deed in fee simple," implies an obligation on the part of the vendor, to procure a patent for the land. But such implication is so qualified by the clause, "the said vendor is to be at no expense for obtaining the patents, or any other title, voucher or document which the said vendee will think proper to get for his own personal satisfaction or security" as to relieve the vendor from such obligation.

APPEALS by the plaintiff in two cases, from the Circuit Court of *Mifflin* county, where, under the charge of the Court to the jury, (who were qualified to try both causes,) that he was not entitled to recover from the evidence given, he suffered non-suits. He then moved the Circuit Court to set the non-suit in each cause aside, and grant a new trial; which motion was over-ruled. From this decision the plaintiff appealed, alleging that the charge of the Court to the jury was against law.

Both of these suits had been instituted by the plaintiff, *James Le Ray De Chaumont* against *Robert Forsythe*, the intestate, in his life time, and he had confessed a judgment to the plaintiff in each case. Sometime afterwards upon affidavit filed, and application by *Robert Forsythe*, the then defendant to the court, these judgments were opened, and the defendant let in to a defence; since which time he died, and *Matthew Forsythe*, his administrator, has been substituted.

In the first case the plaintiff claimed the amount of four notes which he had taken of the deceased, for payment of a part of the purchase money of three hundred and nine acres of land, lying in *Bedford* county, which the plaintiff, by articles of agreement, bearing date the 17th of June, 1818, sold to the deceased.

The second suit was for a small balance due on notes given by the deceased to the plaintiff, for the purchase-money of land lying on *Jack's Creek*, in *Mifflin* county, which had been sold by the plaintiff to the deceased in 1810, as appeared by articles of agreement given in evidence on the trial.

The plaintiff gave in evidence the notes of the intestate, shewing the amount of his claims. The defendant then gave in evidence,

Le Ray De Chaumont *v.* Forsythe.

the articles of the 17th of June, 1818, between *James Le Ray De Chaumont,* and *Robert Forsythe,* which are as follows: "Agreement 17th June, 1818, *James Le Ray De Chaumont,* with *Robert Forsythe,* whereas the Hon. Proprietaries of Pennsylvania did on the 25th of Oct'r. 1765, grant unto *John Cadwallader* a warrant for 360 acres of land or *Yellow* creek, in *Morison's Cave,* since surveyed and returned into the surveyor General's office; for 429½ acres, and the said *J. Cadwallader* by deed-poll, dated 29th October, conveyed the said warrant to *Charles Cox,* his heirs and assigns, which said *Charles Cox* conveyed it the 15th July, 1789, by a warranty deed, to his daughter *Grace Cox De Chaumont* which *Grace* conveyed it to the said *J. Le Ray De Chau·mont,* her husband, the 29th May, 1790. Now therefore the said *James,* for himself, his heirs, &c. covenants and agrees with the said *Robert,* his executors and administrators, to sell and convey to him by a good warranty deed in fee-simple, the said tract of 429½ acres, above mentioned, excepting what has been sold of it by the said *C. Cox,* to one *T. Snowberger,* estimated to be about 120 acres, and leaving about 309 acres and the usual allowance, more or less, it being understood between the parties that the said *James* gives, and the said *Robert* receives, the said tract of land for what remains in it after the above exception, without having any call upon one or the other hereafter for the deficiency or the extra quantity of acres. The deed to be delivered to the said *Robert* after the payments hereafter mentioned, to be paid on the part of the said *Robert.* And the said *Robert* for &c. covenants and contracts with the said *James,* &c. to pay him for said tract $3270 70, cents in manner following:—On 1st Dec'r. 1818, $400; 1st March 1819, $400; 1st June 1819, $400; 1st September 1819, $400; 1st December, 1819, $400; 1st March 1820, $400; 1st June 1820, $400; 1st September 1820, $470 70; making in all $3270 70; in his several bills payable at the United States' Bank at Philadelphia, excepting $70 70 of the above sum, which is to be paid to the present occupant of the land herein contracted for: the whole of the payments to be made exactly.

"It is further understood between the parties, that the said *James* will deliver to the said *Robert* the *original deed* given by the said *Charles Cox* to the said *Grace Cox De Chaumont* to be registered in the counties of *Mifflin* and *Bedford,* state of *Pennsylvania,* and that the said *James* is to be at *no expense* for the said registering or *obtaining* the *patents* or other title, voucher or document which the said *Robert* will think proper to get for his own personal satisfaction or *security.* The said *James* giving him at the same time full powers to claim the said title, voucher or document from every person or persons public or private."

Le Ray De Chaumont *v.* Forsythe.

The defendant next gave in evidence the deed of conveyance above recited from *Charles Cox* and his wife to *Grace Cox,* upon which was indorsed the deed of conveyance dated May 29th, 1790, from *Grace Cox,* who at this time had become the wife of *James Le Ray De Chaumont,* to her husband. This indorsement, which was in the form of a deed from her, was not acknowledged but merely proved by her brother who testified to her handwriting. Defendant further read in evidence a certificate from the land office shewing that the 309 acres sold to *R. Forsythe* by plaintiff were not patented, and that of purchase money and interest thereon, there was due to the state on the 22d of June, 1824, seven hundred and forty-one dollars and ninety-five cents. The plaintiff, as appeared, derived his title to the *Jack's Creek* land from *Charles Cox* in the same way and by the same conveyances as he did to the 309 acres. The plaintiff here proved that *Grace Cox* his wife died in 1812, leaving two sons *Vincent* and *Alexander* and *Theresa* a daughter who had intermarried with Mons. *Gouvello.* That on the 1st of October, 1823, by deed of that date *James Le Ray De Chaumont* in consideration of $2451 therein specified, conveyed in fee simple with general warranty the three hundred and nine acres, to his son *Vincent Chaumont* with the following clause therein inserted, to wit, "which said 309 acres, by writing, bearing date the 17th day of June, 1818, were contracted to be sold by the party of the first part to *Robert Forsythe* for the price and conditions in said writing or contract of sale mentioned, which is herewith assigned and transferred by the party of the first to the party of the second part, and to which contract of sale this *present deed of conveyance is to be subject.*

The plaintiff then gave in evidence a deed of release dated March 8th, 1827, by *Vincent Le Ray De Chaumont* for himself, and as attorney for Mons. *Gouvello* and *Theresa* his wife, his brother-in-law and sister, and his brother *Alexander,* in the words following: "In consideration of one dollar, have and every of them hath, remised released and for ever quit claimed, and by these presents do for themselves and their heirs remise release and for ever quit claim unto *Matthew Forsythe,* of, &c. and to his heirs, &c. in trust and for the use, benefit, and behoof of the right *heirs of Robert Forsythe,* deceased, their heirs, &c. *all the estate right title interest, property claim and demand whatsoever* of them, the said, &c. of, in, to, or out of all that tract, &c. surveyed in pursuance, &c. returned, &c. conveyed, &c. Also all that certain tract in, &c. surveyed, &c. and which two last tracts by virtue of sundry conveyances became vested in *Charles Cox* in fee, who by his deed aforesaid dated the 15th July, 1789, conveyed the same to his daughter the aforesaid *Grace Cox,* mother of the foregoing releas-

ors in fee, together with all and singular the hereditaments and ap-
purtenances to the said, &c; to have and to hold, the said tracts
of land, hereditaments and premises, &c. so that neither the said
*Vincent, Alexander,* &c. nor their heirs nor any other person
or persons for them or any of them, or in their or any of their
rights or names shall or may by any means whatsoever at any
time hereafter, claim, challenge or demand any estate, of, in,
and to, said tracts, &c. But of and from all actions, &c. estate;
right, &c. shall be for ever barred. And the said *Vincent,* &c.
the said several tracts of land, hereditaments and premises hereby
released and quit claimed or mentioned or intended so to be with
the appurtenances against all persons, shall and will jointly and
severally warrant and forever defend, &c."

Also another deed dated September 15th, 1828, executed to the
same by *Vincent, Le Ray De Chaumont* and *Alexander Le
Ray De Chaumont* in their proper persons and by Mons. *Gou-
vello* and his wife by their attorney in the same words, except
some difference in the description and probate. Also a deed of the
6th of March, 1830, *Pierre Armand, Jean Vincent Hippolite
De Gouvello* and *Maria Theresa Le Ray De Chaumont* his
wife, to *Matthew Forsythe,* in consideration of one dollar where-
by they "granted, bargained, sold, remised, released and forever
quit claimed unto the said *M. Forsythe* his heirs, &c. in trust
for the heirs of *Robert Forsythe* and their heirs, all the es-
tate, right, title, interest, property, claim and demand of them, &c.
of, in, to, &c. describing the land as before with similar covenants:
and was acknowledged before the United States' Consul at *Paris*
in *France* on the 6th of March, 1830. These releases and con-
veyances from the children and heirs of *Grace Cox Le Ray De
Chaumont* late wife of the plaintiff to the defendant *Matthew For-
sythe* in trust for the heirs of *Robert Forsythe,* deceased, inclu-
ded both the *Bedford* and *Mifflin* county lands which had been
sold by the plaintiff to *Robert Forsythe* in his life time, and for the
payment of the purchase money or part thereof, he had given his
notes, upon which the plaintiff's claims were founded in these
suits.

His honour the judge of the Circuit Court, before whom these
causes were tried, after the testimony was closed on both sides, in-
structed the jury, that the plaintiff at the time of the last sale, had
but a life estate as tenant by the curtesy, that the deed of convey-
ance from his wife to him was a nullity;—in short that he had no
fee-simple, or such estate as he had covenanted to convey to *Robert
Forsythe,* that although the plaintiff had made a deed of convey-
ance to his son *Vincent* in fee-simple with general warranty of the
land which he sold to *Forsythe,* and with a view as it would appear,
from the face of that deed, to enable his son *Vincent* to fulfil his

Le Ray De Chaumont *v.* Forsythe.

contract with *Forsythe,* by conveying the land to him in fee-simple as soon as he should have paid all the purchase money, might be sufficient to convey his life estate; and the releases and deeds which had been executed by *Vincent,* his brother and sister and her husband and been given in evidence, might be sufficient to convey the reversionary estate in fee of which they were seized; yet they were not sufficient and did not convey and transfer to *Forsythe's* heirs the life estate which had been vested in the plaintiff and the benefit of the covenant of general warranty contained in his deed of conveyance to *Vincent* the son; because, as the judge said "*Vincent* does not design to convey what he got from his father, and no one of them purported to convey his right, or purposed or intended to be liable on his contract. The words do not make any one of them liable on his contract and evidently and plainly they did not intend to be so."

*S. Alexander* for appellant.

Every part of the agreement between *Chaumont* and *Forsythe* must be considered in construing its true meaning: and although the seller is bound thereby, to give "a good warranty deed in fee simple" to the purchaser, yet it also provides that patents are to be obtained by *Forsythe* at his own expense. The father having conveyed to his son with general warranty; who together with his brother and sister, conveyed to *Forsythe,* vested in him a perfect indefeasible estate in fee; and gave him also the benefit of the warranty of the vendor, who originally contracted with him. On the trial, the defendant did not offer to re-convey; he held possession of the land, and wanted to hold the price of it also.

The plaintiff was at all events, entitled to a conditional verdict, that no execution should issue, until the title was made perfect. The contract could not, in a suit like this, be rescinded; but if the title was defective, the defendant should have been compensated in damages and not be defeated in his action. *Fulweiler* v. *Baugher,* 15 *Serg. & Rawle,* 45.

*Potter* and *Blanchard* for appellee.

The contract was executory, no deed having been made; this action is, therefore, in the nature of a bill in equity, to compel a specific performance of the agreement. There are two classes of cases which are nearly allied to each other. 1. When an action is brought to recover the purchase money, after the deed has been made, and the title is defective; then the amount of such defect is the measure of damages. 2. When suit is brought upon the articles of agreement or bonds, before deed made, although the payment of the purchase money be a condition precedent; yet the defendant may show that the plaintiff has no title, and can have none;

(Le Ray De Chaumont *v.* Forsythe.)

and thereby defeat his action. In this case the warranty of title was a material part of the consideration. If, therefore, the vendor has put it out of his power, to comply with his covenant, to convey the land in fee to the vendee, can he thus call upon him for a specific performance of the agreement on his part? . The vendor has, in conveying the land to his son, done an act inconsistent with his covenant, and he cannot call upon *Forsythe* to comply. ·*Huber* v. *Birke*, 11 *Serg. & Rawle*, 238. .* *Cook* v. *Grant*, 16 *Serg. & Rawle*, 198. *Coke Lit.* 220. Taking it for granted, that the deed of the children conveyed the warranty of the father, yet that warranty was not such as the father was bound by his agreement to give to *Forsythe*. The consideration mentioned in the deed from the father to the son, was $2451, and upon an eviction from the land, no more than that sum could be recovered on the warranty. *Bender* v. *Fromberger*, 4 *Dall.* 441. *King* v. *Pyle*, 8 *Serg. & Rawle*, 166; yet the consideration which *Forsythe* was to pay, was $3270; and this recital in the deed would be conclusive against *Forsythe*, in an action on the warranty against *Chaumont*. But if this recital is not conclusive, will the law, in a case like this, throw the burden upon *Forsythe*, of proving what the consideration actually was, between *Vincent* and his father? A warranty may be broken when proof of the actual consideration between the father and son, now existing, is silent in death.

The vendor when he covenanted to sell, had the title in him to the land: he had but a life estate. When he conveyed to his son, that life estate was thereby merged in the fee. The deed from the father to the son, was not *part of the title;* and the deed from the son to *Forsythe* does not recite the deed of the father; it was not, therefore, assigned, and the covenant contained in it does not run with the land.

A good warranty deed in fee simple must be clear of all incumberances. The patenting money not having been paid by the vendor, he did not offer to convey such title. The clause in the agreement, relied upon on the other side, has relation only to small matters, such as fees of office, vouchers, copies of papers, &c. Expressions in a deed or agreement must be taken most strongly against the grantor.

The opinion of the court was delivered by

KENNEDY, J.—The Circuit Court was certainly correct in telling the jury, that the plaintiff at the time he sold the land to *Robert Forsythe*, had but a life estate in it. The reversion in fee, was vested in his children which he had by his wife *Grace*. But it is believed that the court was in error in saying, that the releases and deeds executed by *Vincent* and the other children, did not

transfer the life estate of the father, the plaintiff, to the heirs of *Robert Forsythe*, together with the benefit of the covenant of general warranty, contained in his deed to *Vincent.* As the father made his deed of conveyance to *Vincent* alone, he alone thereby became invested with all the father's estate in the land, whether legal or equitable, and he alone could, after this, convey it to *Forsythe* or his heirs. Now, although *Vincent*, in his deeds of release to *Forsythe's* heirs, has no direct reference to his having derived any interest or right to the land from his father, he does in express terms, release *all his estate, right, title, interest, property, claim and demand whatsoever*, without saying from whom he derived what he thereby released. He neither refers to his father or mother, as having obtained any interest in the land, through or by or from them, or either of them. He traces the title down to his mother in these lands, but he does not undertake to say that that title had become vested in him by descent, or in any other way. The whole certainly does profess and import to release and transfer all the estate, right, title, interest, property, claim and *demand whatsoever*, and must necessarily include all the estate, right, title, interest, property, claim, and demand which he had to the land, whether derived from his father or mother. As well might it be said, that his release had passed nothing which descended to him from his mother, because it is not alleged by recital or otherwise, in the release that he had become invested with any interest or claim to the land in that way. This error of the Circuit Court, might readily happen in the hurry of the trial, from a misapprehension of the language of the release, and the very short time that is allowed upon those occasions for examination, in supposing that the interest and estate released, were described as having descended to the releasor from his mother. Such, however, is not the fact. I consider it evident then, that *Vincent*, by his deed of release, passed to the heirs of *Robert Forsythe*, a complete legal title for the life estate, which had been in his father, as also for all his reversionary interest in fee, to one undivided third part of the lands. I also think it manifest, from the whole transaction, and the face of the deeds and documents, that they were all executed with a view to, and for the purpose of, carrying into effect, the articles of agreement which the plaintiff had made with *Robert Forsythe.* It is evident from the clause which is contained in the deed of conveyance from the father to *Vincent*, that he did it for the express purpose of enabling him to convey to *Forsythe,* after the purchase money should be paid; and with that in his mind, he adds a covenant of general warranty, which *Vincent*, when he transferred in fee to *Forsythe* would necessarily transfer also to *Forsythe*, as it was a covenant that would go with the land. In order to do this it was

(Le Ray De Chaumont *v.* Forsythe.)

not necessary that *Vincent* should make a deed of conveyance or release to *Robert Forsythe*, or his heirs, with a general warranty on his part, so as to enable *Forsythe* or his heirs in case of eviction to recover of the plaintiff for a breach of his covenant of warranty contained in the deed of conveyance to *Vincent.*    For this purpose it would have been sufficient for *Vincent* to have conveyed or to have released in fee simple, to *Forsythe* or his heirs, without any warranty at all.    Indeed it may be, that this is the more safe way, in order to avoid all objections; though I think myself, that either with or without general warranty, would answer the same end.    Yet the general rule laid down on this subject, in *Bickford* v. *Page*, 2 *Mass.* 460, and in *Kane* v. *Sanger*, 14 *Johns.* 93, is, that when covenants run with the land, if the land is assigned or conveyed before the covenants are broken, and afterwards they are broken, the assignee or grantee can alone bring the action of covenant to recover damages; but if the grantor or assignor is bound to indemnify the assignee or grantee, against such breach of covenant, then the assignor or grantor must bring the action, and in the case last cited, it was held, that the grantee or assignee with warranty could not maintain an action for breach of covenant by a prior warrantor, because the plaintiff had his indemnity on the covenant made immediately to himself.    This qualification of, or exception to the rule, is not to be found in *Co. Lit.* that I know of.    In *Co. Lit.* 384 *b.*, *Coke*, on this subject says, "in judgment of law, the assignee of the heir is the assignee of the ancestor, and so the assignee of the assignee shall vouch *in infinitum* within these words (his assigns.")    See also *Butler's* note to page 384 *a*, No. 332, where he says, a purchaser who has notice of a defect in the title to the land, at the time of his buying, and does not take a covenant to provide against it from his vendor, he is without remedy; unless he can avail himself of the covenants of the *earlier vendors*, many of which are *inherent to the lands*, and to some of which, as the covenant for *quiet enjoyment*, there is no objection on account of their antiquity, when the breach is *recent.*    I am inclined to think, that the assignee or grantee, may maintain his action for a breach of covenant, which takes place in his time, and that has run with the land, whether he have a warranty or not to himself, against any of the prior grantors or assignors, who have entered into such covenants. *Withy* v. *Mumford*, 5 *Cowan*, 137, *Booth* v. *Starr*, 2 *Connec. Rep.* 244, *Shep. Touch.* 176, 198, *Com. Dig. tit. Covt. G.* 3. *Baylye* v. *Hughs*, *Cro. Car.* 137, *Bac. Abr. Covt. E. pl.* 2, 5.    *Middlemore* v. *Goodale*, *Cro. Car.* 503.    In this transaction it is further manifest, that the children of the plaintiff, have given and executed their releases of all right, interest, claim and demand whatsoever, which they had to the land, in favor of the heirs, of *Robert Forsythe*, for the purpose of

carrying into effect the articles of agreement which their father made with the deceased.    They had no contract or connection with *Robert Forsythe* or his heirs, in respect to the land.    They were under no obligation to them or either of them.    There is no reason for which it can be supposed or imagined that they executed the releases, but that of fulfilling the agreement and design of their father in making *Robert Forsythe* and his heirs perfectly secure in the title to the land.    For this purpose it was not necessary that they should bind themselves by warranty, nor yet express any other consideration in their deeds than nominal ones.    The deed of conveyance from the plaintiff to his son, constituted him a trustee for carrying into effect his agreement with *Forsythe* for the sale of the land.    It is fair to presume that *Vincent* accepted of this trust, as he has not only made an assignment of all his interest and estate in the lands to *Forsythe's* heirs, but obtained authority of his brother and sister to transfer their rights also.    In this way *Forsythe's* heirs have not only become the assignees of the plaintiff, and as such entitled to the benefit of his general warranty in the deed to *Vincent*, but by the deeds of release and conveyance from the children of the plaintiff, every claim and interest that are known to have existed at any time for this land in any body, have been vested in these heirs, except the claim which the Commonwealth has for a balance of the purchase money.

This brings us to another question, which will present itself on the trial of these causes again, in the Circuit Court; and therefore it is proper to express the opinion of this court on it now.    In order to decide this question correctly, it is necessary to look into the whole of the agreement between the plaintiff and *Robert Forsythe;* and to ascertain what was their meaning and intention; for this, whatever it may be, if lawful, must determine the matter on this point.    In one part of the agreement the plaintiff covenants, "to sell and convey to him, *(Forsythe)* by a good warranty deed in fee simple."    This, according to some decisions, if there was nothing more in the agreement relating to this matter, would imply an obligation on the part of the plaintiff to procure a patent for the land, but in a subsequent part of the agreement follow these words: "It is further understood between the parties, that the said *James* will deliver to the said *Robert* the original deed given by the said *Charles Cox,* to the said *Grace Cox de Chaumont,* to be registered in the counties of *Mifflin* and *Bedford,* state of *Pennsylvania,* and that the said *James* is to be at no expense for the said registering or obtaining the patents, or any other title, voucher or document which the said *Robert* will think proper to get for his own personal satisfaction or security.    The said *James,* giving him full power at the same time to claim the said title, voucher or docu-

(Le Ray De Chaumont *v.* Forsythe.)

ment from every person or persons, public or private." Here we have an express stipulation, that the plaintiff is to be at no expense in obtaining the patent. What is the expense of obtaining the patent, and what would be generally understood by this expression? Surely whatever remained to be paid to the state, in order to obtain it. It is a rule in the construction of agreements to give effect to all the words used by the parties, as far as practicable, and to receive them according to their common acceptation. It appears to me that it would not only be a direct violation of this rule, but of the intention of the parties, to decide, that the plaintiff was bound by this agreement to be at the expense of procuring the patent. It has been contended that the other words which stand in connection with the words "obtaining the patent," show that they were used to convey a quite different idea; such as not being at the expense of registering or obtaining certified copies of title deeds for the land, or the deeds themselves, wheresoever they might be found, either with a public officer, in a recorder's office, where they might have been left for record, or with any private individual. All this may well apply to the deeds forming the links in the chain of title for this land, from the warranty down to *Grace Cox's;* for it would seem from the plaintiff's having covenanted to deliver to *Forsythe* the original deed of conveyance, and that alone, from *Charles Cox* to *Grace* his daughter, that that was the only deed, voucher or document connected with the title to the land that he had in his possession; and that *Forsythe* was to look after the others, and to be at the expense of procuring copies when the original could not be had, and to have the authority and power of the plaintiff, to demand and receive the original deeds wherever they might be found. All this was necessary as a preparatory step to obtain from the land-office the patent; but it seems to me impossible, without doing violence to the meaning of the parties to say, that they, both knowing that no patent existed then, intended nothing more by using the words "obtaining the patent," than that the plaintiff should not be at the expense of registering it, which to be sure is done in the land-office; but for which every body knows there is no separate charge or fees to be paid; or for obtaining a certified copy of a patent known not to be in being. It appears to me that such title, as the plaintiff was bound to make to *Forsythe* or his heirs, has already been made; and there remains no good objection to the payment of the balance of the purchase-money, whatever it may be. That the non-suits in both cases ought to be taken off, and the causes reinstated for trial, and records remitted to the Circuit Court, which is ordered to be done.

Judgment reversed, and new trial awarded.